# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| STEVEN E. HAMMER, | ) | |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | Case No. 08-CV-W-339-FJG |
| Plaintiff, | ) | |
| | ) | CLASS ACTION |
| v. | ) | |
| | ) | |
| JP'S SOUTHWESTERN FOODS, L.L.C. | ) | |
| d/b/a JOSE PEPPER'S BORDER | ) | |
| GRILL & CANTINA; and DOES | ) | |
| 1 through 10, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S SUGGESTIONS IN SUPPORT
## OF MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF UNCONTROVERTED MATERIAL FACTS ..................................... 2

     A.   Defendant JP's .......................................................................................... 2

     B.   Defendant Contracts with Heartland Payment Systems, Inc. for
          Credit Card Processing Services ............................................................... 2

     C.   Defendant is Repeatedly Advised by Heartland Payment Systems, Inc.
          Regarding the Truncation Requirements ................................................... 4

     D.   Defendant's General Manager, District Manager, and Owner Are
          Personally Notified About JP's Failure to Comply With FACTA ......................... 8

     E.   Defendant Provides Plaintiff a Non-Compliant Receipt ......................... 10

     F.   Defendant Finally Updates its Credit Card System to Comply with FACTA ....... 11

     G.   Defendant Issues Approximately 45,000 Non-Compliant Receipts to Its
          Customers from December 4, 2006 through December 7, 2007 ........................ 11

III.  ARGUMENT .................................................................................................... 12

     A.   Summary Judgment Standards ................................................................ 12

     B.   Defendant Indisputably Violated FACTA as a Matter of Law ............................ 13

     C.   Defendant Acted Willfully In Violating FACTA as a Matter of Law ................... 14

     D.   Whether Plaintiff Suffered Actual Harm Is Immaterial as a Matter of Law ......... 19

IV.   CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248 (1986) ................................................................................13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................13

*City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*,
838 F.2d 268 (8th Cir. 1988) ..........................................................................13

*Edwards v. Toys "R" US*,
527 F. Supp. 2d 1197 (C.D. Cal. 2007) ..........................................................15

*Ehrheart v. Lifetime Brands, Inc.*,
498 F. Supp. 2d 753 (E.D. Pa. 2007) ..............................................................20

*Farmer v. Brennan*,
511 U.S. 825 (1994) ........................................................................................15

*Irwin v. Hoover Treated Wood Products, Inc.*,
906 F. Supp. 530 (E.D. Mo. 1995) .................................................................13

*Korman v. Walking Co.*,
503 F. Supp. 2d 755 (E.D. Pa. 2007) .........................................................15, 20

*Murray v. New Cingular Wireless Servs., Inc.*,
523 F.3d 719 (7th Cir. 2008) ..........................................................................15

*Pirian v. In-N-Out Burgers*,
2007 WL 1040864, at *3 (C.D. Cal. Apr. 5, 2007) .........................................15

*Ramirez v. MGM Mirage, Inc.*,
524 F. Supp. 2d 1226 (D. Nev. 2007) .............................................................20

*Reynolds v. Hartford Financial Servs. Group, Inc.*,
435 F.3d 1081 (9th Cir. 2006) ........................................................................19

*Safeco Ins. Co. of America v. Burr*,
551 U.S. 47 (2007) .............................................................................14, 15, 19

*Soualian v. International Coffee & Tea, LLC*,
2008 WL 410618, at *4 (C.D. Ca. February 09, 2008) ...................................20

**STATUTES**

15 U.S.C. § 1681c(g) .................................................................................................1, 13, 15, 20

15 U.S.C. § 1681n ..............................................................................................1, 14, 15, 19, 20

**RULES**

Fed.R.Civ.P. 56.............................................................................................................................1, 12

# I.  INTRODUCTION

Plaintiff's Complaint (Doc. #1) asserts a claim against Defendant JP's Southwestern Foods, L.L.C. d/b/a Jose Pepper's Border Grill & Cantina ("Defendant" or "JP's") for violations of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g) and seeks statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A).

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff respectfully moves the Court for partial summary judgment on the *liability* of Defendant for violations of FACTA on the ground that there is no genuine issue of material fact that: (1) Defendant violated FACTA by printing more than the last five digits of its customers' credit card number on electronically-printed receipts provided to the customers at the point of sale; and (2) Defendant willfully violated FACTA by providing its customers with a non-compliant receipt, *i.e.,* an electronically-printed receipt containing more than the last five digits of the credit card number, either with knowledge that doing so violated the law or in reckless disregard of whether its conduct violated the law.  Based on the indisputable and overwhelming evidence acquired in this case, no reasonable jury could conclude otherwise.  Therefore, Plaintiff respectfully submits that his motion for partial summary judgment be granted.  Once the Court grants Plaintiff's Motion for Partial Summary Judgment, the determination of the amount of statutory damages allowed by 15 U.S.C. § 1681n(a)(1)(A), amount of punitive damages, and the award of attorney fees will be the sole remaining issues.  *See* Fed.R.Civ.P. 56(d)(2) ("[a]n interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages").

## II. STATEMENT OF UNCONTROVERTED MATERIAL FACTS

### A. Defendant JP's

1. Defendant operates a Mexican restaurant called Jose Pepper's Border Grill and Cantina in Kansas City, Missouri. (JP's Southwestern Foods, LLC's Responses to Plaintiff's First Request for Admissions, attached as Ex. 1, ¶ 10; Ed Gieselman Deposition, attached as Ex. 2, at 18:20-19:5).

2. Ed Gieselman is a 50% owner of Defendant. (Ex. 2, at 18:20-20:9). Mr. Gieselman is also the president and 100% owner of Northstar Restaurants, Inc. (Ex. 2, at 26:16-20; Management Agreement, attached as Ex. 10). Northstar Restaurants, Inc., is the agent of and contracted with Defendant to manage its restaurant business. (Ex. 10).

3. The remaining 50% interest in Defendant is owned by Charles Erwin, who has no involvement in the management of Defendant's business operations. (Ex. 2, at 18:20-20:9).

4. Defendant JP's is located at 511 N.W. Barry Road, Kansas City, Missouri 64155. (Ex. 1, ¶ 10).

5. Defendant is a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA, 15 U.S.C. § 1681 *et seq.* (Ex. 1, ¶ 7).

6. In transacting such business, Defendant uses cash registers and/or other machines or devices that electronically print receipts for credit card and debit card transactions. (Ex. 1, ¶ 6).

7. Each of the five credit card terminals used by Defendant prints the same type and form of receipts. (Mitch Osborn Deposition, attached as Ex. 3, at 117:2-19).

### B. Defendant Contracts with Heartland Payment Systems, Inc. for Credit Card Processing Services

8. From 2003-2007, Defendant used the services of Heartland Payment Systems, Inc. ("HPS") for credit card processing. (JP's Southwestern Foods, LLC's Responses to Plaintiff's Second Request for Admissions, attached as Ex. 4, ¶ 148, 150, 152, 154, 156).

9. In 2003, Mr. Gieselman executed and entered into the Merchant Services Application and Agreement with HPS on behalf of Defendant. (Ex. 2, at 56:7-14).

10. Mr. Gieselman understands that the function of HPS is to process the credit cards and transfer the funds into Defendant's bank account. (Ex. 2, at 57:5-16).

11. At the time Mr. Gieselman read and executed the Merchant Services Application and Agreement with HPS, there were policies, procedures, terms, and conditions that Defendant agreed to follow. (Ex. 2, at 61:15-62:4; Documents produced by JP's Southwestern Foods, LLC, attached as Ex. 5, at JP-00753-754).

12. The Merchant Services Application and Agreement required the following certifications, which were located directly above Mr. Gieselman's signature:

> Each of the undersigned certifies as follows: I am an owner or officer authorized by the MERCHANT named above to execute this Application and Merchant Processing Agreement. [...] I further certify that I have received, read, understand and agree to the **Card Acceptance Policies, Procedures and Terms and Conditions** accompanying this Application and that, when approved by Acquirer/HPS, this Application and the accompanying Card Acceptance Policies, Procedures and Terms and Conditions shall constitute the agreement between the parties.

(Ex. 5, at JP-00754).

13. Specifically, the Card Acceptance Policies, Procedures, Terms and Conditions set forth several "Rights, Duties, and Responsibilities of Merchants" – one of which related directly to credit card transactions:

> In cases where prompted by the terminal to do so, MERCHANT shall key enter the last four digits of the bankcard to verify the contents of the magnetic stripe

and shall deliver a completed copy of the Sales Draft to the Cardholder. **However, the Cardholder copy shall not contain the expiration date or more than the last five digits of the Cardholder number.**

(Ex. 2, at 62:8-63:25; Documents produced by Heartland Payment Systems, attached as Ex. 6, at HPS-00088 (emphasis added)).

**C. Defendant is Repeatedly Advised by Heartland Payment Systems, Inc. Regarding the Truncation Requirements**

14.     From 2003-2007, Defendant received regular invoices and/or merchant statements from HPS with respect to its credit card processing services. (Ex. 4, ¶ 149, 151, 153, 155, 157; Ex. 2, at 83:25-84:3).

15.     Defendant's corporate office is responsible for paying the HPS invoices each month. (Ex. 2, at 84:18-85:3).

16.     Defendant's corporate office received a similar bill each month from HPS for each of the restaurants owned by Mr. Gieselman. (Ex. 2, at 88:2-5).

17.     Thus, in 2006 and 2007, Mr. Gieselman received approximately eight statements from HPS for each particular month, one for each restaurant that he owned. (Ex. 2, at 88:2-14).

18.     Mr. Gieselman expects someone at Defendant's corporate office to read and review the bills and statements received from vendors. (Ex. 2, at 55:23-56:1; JP's Southwestern Foods, LLC's Responses to Plaintiff's Third Request for Admissions, attached as Ex. 7, ¶ 242).

19.     An individual at Northstar Restaurants, Inc., is responsible for reading and reviewing the bills and statements that are received from vendors for JP's. (Ex. 7, ¶ 244).

Northstar Restaurants, Inc., is the agent of, and contracted with, Defendant to manage its restaurant business. (Ex. 10).

20.     Mr. Gieselman expects that before any bills or statements are approved for payment or paid by the corporate office, that those bills are reviewed to confirm the bill is appropriate for payment. (Ex. 2, at 56:2-6).

21.     In **January 2005**, Defendant received, during its regular course of business, a paper statement from HPS that notified and warned Defendant about the truncation requirements. (Ex. 6, at HPS-00051-HPS-00053; Ex. 4, ¶ 124).

22.     In the paper statement received by Defendant from HPS in January 2005, the following message was displayed immediately below the area stating the total fees due by Defendant for HPS's credit processing services:

> VISA AND MASTERCARD HAVE MANDATED THAT IN AN EFFORT TO MAINTAIN CARDHOLDER SECURITY, ALL ELECTRONICALLY PRINTED CUSTOMER RECEIPTS TRUNCATE ALL BUT THE LAST FOUR DIGITS OF THE CARDHOLDER CREDIT CARD NUMBER AND SUPPRESS THE EXPIRATION DATE. HPS MEETS THE REQUIREMENTS FOR ALL TERMINALS SHIPPED SINCE JULY 2002 AND UPDATES MERCHANT'S SOFTWARE WHEN POSSIBLE. IF YOUR CUSTOMER RECEIPTS DO NOT MEET THE MANDATES PUT IN PLACE BY THE ASSOCIATIONS OR IN SOME CASES SPECIFIC STATE LAWS, CONTACT HEARTLAND AT 1866-240-4284 FOR DETAILS ON HOW TO BECOME COMPLIANT WITH THE REGULATIONS. IF YOU USE A POS SYSTEM PROVIDED AND MAINTAINED BY A THIRD PARTY VENDOR, YOU WILL NEED TO CONTACT THE VENDOR DIRECTLY FOR SOFTWARE UPDATES.

(Ex. 6, at HPS-00053).

23.     Defendant received, during its regular course of business, HPS invoices for the following months:

(1)     **June 2005**, (Ex. 6, at HPS-00045-HPS-00047; Ex. 4, ¶ 122);

(2)     **July 2005**, (Ex. 6, at HPS-00048-HPS-00050; Ex. 4, ¶ 123);

(3)     **November 2005**, (Ex. 6, at HPS-00002-HPS-00004; Ex. 4, ¶ 104);

(4)     **December 2005**, (Ex. 6, at HPS-00005-HPS-00007; Ex. 4, ¶ 105);

24.     In the invoices received by Defendant from HPS for the months of June 2005, July 2005, November 2005, and December 2005, there were advisories regarding the truncation requirements similar to the advisory contained in the January 2005 invoice.  (Ex. 6, at HPS-00047; Ex. 6, at HPS-00050; Ex. 6, at HPS-00004; Ex. 6, at HPS-00007).

25.     Defendant received another paper statement from HPS dated May 31, 2006.  (Ex. 5, at JP-00925-JP-00930).

26.     The HPS statement dated May 31, 2006, received by Defendant contained a section entitled "Hints & Tips" that stated:

> **Does your point-of-sale system or terminal make the cut?**  On June 30, 2006 your point-of-sale (POS) system or terminal will be required by Visa regulations to limit the information appearing on electronically printed credit card cardholder receipts to help reduce identity theft and credit card fraud.
>
> Here's what your POS system or terminal must eliminate on all electronically produced cardholder credit card receipts:
>
> ▪    Card expiration date
>
> ▪    All but the last 4 or 5 numbers of the credit card depending on state laws
>
> To make sure that your POS system or terminal is in compliance with this requirement, contact your local Heartland Relationship Manager or call 888-963-3600 today.

(Ex. 5, at JP-00928).

27.     Defendant received, during its regular course of business, another paper statement from HPS dated July 31, 2006.  (Ex. 6, at HPS-00068-HPS-00073; Ex. 5, at JP-00939-00944; Ex. 4, ¶ 129).

28.     The HPS statement dated July 31, 2006, received by Defendant contained the following "Important Message" displayed on the first page of the invoice, immediately below the area stating the total fees due by Defendant for HPS's card processing services:

In an effort to maintain cardholder security, Visa and MasterCard have mandated that all electronically printed customer receipts truncate all but the last four or five digits of the cardholder credit card number and suppress the expiration date. HPS meets the requirements for all terminals shipped since July 2002 and updates merchant's terminal software when possible. If your customer receipts do not meet the mandate put in place by the Associations or in some specific cases state laws, contact Heartland at 888-963-3600 for details on how to secure compliance with regulations. If you use a POS system provided and maintained by a third party vendor and want details on how to meet the compliance regulations, contact your vendor directly for software requirements and software updates.

(Ex. 6, at HPS-00068; Ex. 5, at JP-00939).

29.    Defendant received, during its regular course of business, another paper statement from HPS dated April 30, 2007. (Ex. 6, at HPS-00074-HPS-00078; Ex. 5, at JP-00985-00989; Ex. 4, ¶ 130).

30.    The HPS statement dated April 30, 2007, received by Defendant contained the following message displayed in a "New @ Heartland" section of the Merchant Statement:

> **Ensure Your System is Compliant with New State Laws.** To promote consumer protection and reduce identity theft, many states are legislating and enforcing truncation of the merchant and customer receipts. (MasterCard and Visa only require the truncation of the cardholder copy of the receipt.). State laws prevail and penalties for violating these laws can range from $100 to $1,000 for each receipt issued. To ensure compliance with these new laws and protect your business from costly lawsuits, you should follow these easy steps:
>
> - Make sure no more than the last 5 digits of the consumer's card number are printed on receipts
>
> - Confirm that you are not printing the card's expiration date on receipts
>
> - Contact your state representative or legislative office to determine the laws in your state
>
> - Contact your Heartland Relationship Manager or our Service Center (888-963-3600) to evaluate your point of sale application. If you utilize software, you may need to contact your software vendor and schedule an upgrade. If you have a terminal, you may need to contact Heartland for a download of a new application.
>
> As your partner, we are available to help you understand and comply with these laws. For more information, visit www.HeartlandPaymentSystems.com/News.

(Ex. 6, at HPS-00078; Ex. 5, at JP-00989).

31.     Defendant received, during its regular course of business, another paper statement from HPS dated September 30, 2007.  (Ex. 6, at HPS-00060-HPS-00064; Ex. 5, at JP-01010-01014; Ex. 4, ¶ 127).

32.     The HPS statement dated September 30, 2007, received by Defendant contained the following "Important Message" displayed on the first page of the invoice, immediately below the area stating the total fees due by Defendant for HPS's credit processing services:

> To ensure compliance with Visa and MasterCard rules and regulations, be sure you don't display more than the last four digits of the payment card number – and be sure to suppress or disguise the expiration date on electronically printed customer receipts.  If your electronically printed customer receipts do not comply with these regulations, you need an update.  If you utilize POS software, please contact your POS software vendor and schedule an upgrade.  If you process using a POS terminal, please contact your Heartland Servicing team at 888-963-3600 for a new application download.  In addition, states such as California and Colorado have enacted new "Double Truncation" requirements, whereby you are required to mask both the customer and merchant copies of the electronically printed receipts.  Please check with either your Counsel or state legislative office to determine the exact laws in your state and then either call us or your software vendor as dictated by your POS solution if an update is required.

(Ex. 6, at HPS-00060; Ex. 5, at JP-01010).

33.     Defendant is unable to confirm or deny that it received additional notifications from HPS relating specifically to the truncation requirements.  (Ex. 6, at HPS-00001, HPS-00008-9, HPS-00010-11; Ex. 4, ¶103, 106, 107).

**D.      Defendant's General Manager, District Manager, and Owner Are Personally Notified About JP's Failure to Comply With FACTA**

34.     Mitch Osborn has been the General Manager of Defendant JP's since June 2004. (Ex. 3, at 38:18-40:5).  As General Manager, Mr. Osborn reported to the District Manager, Matt Hench of Northstar Restaurants, Inc.  (Ex. 2, at 27:7-28:1).

35.     Mr. Osborn first became aware of a problem with Defendant's credit card receipts after being notified by customers of the problem prior to May 15, 2007. (Ex. 3, at 76:1-14; Matt Hench Deposition, attached as Ex. 8, at 72:12-73:2).

36.     At that time, Mr. Osborn was told by customers that Defendant's receipts were displaying the customer's entire credit card number. (Ex. 3, at 76:9-14; 77:5-8; 78:15-19).

37.     Mr. Osborn reported this problem to Matt Hench, the District Manager, prior to May 15, 2007. (Ex. 3, at 77:18-20; Ex. 8, at 34:7-35:23; Ex. 7, ¶¶ 192-196, 206, 208; Ex. 8, at 72:12-73:2).

38.     At that time, Mr. Hench was also told that a guest had complained that Defendant was printing entire credit card numbers on receipts. (Ex. 8, at 34:23-35:23; Ex. 7, ¶ 208).

39.     At the time he was told about Defendant's problem regarding receipts containing entire credit card numbers, Mr. Hench knew that printing credit card numbers on receipts was wrong, and that it needed to be fixed. (Ex. 8, at 38:7-39:18).

40.     Mr. Hench informed Mr. Osborn that he would find out what Defendant needed to do to fix the problem of printing credit card numbers on receipts. (Ex. 7, ¶ 210; Ex. 8, at 36:6-13; 40:6-19).

41.     Mr. Hench told Mr. Osborn that he would call Retail Data Systems ("RDS") to find out how to get the problem fixed. (Ex. 8, at 36:6-13; 40:6-19).

42.     RDS was the vendor who sold the computer system to Defendant, and, according to Mr. Hench, would be able to fix the problem. (Ex. 8, at 40:20-41:6).

43.     On or about May 15, 2007, Mr. Hench received a quote from RDS to update Defendant's software. (Ex. 8, at 65:12-24; Ex. 7, ¶ 218).

44.     RDS prepared this quote for Defendant to fix its credit card problem.  (Ex. 8, at 66:19-22).

45.     Mr. Hench had no authority to approve the RDS quote on his own; it required approval by Defendant's owner, Mr. Gieselman, or by Anita Hance, Mr. Gieselman's sister and Defendant's director of operations.  (Ex. 8, at 66:23-67:15; Ex. 2, at 24:3-18).

46.     The decision to use the Aloha software, the point-of-sale software employed by Defendant, was a corporate decision.  (Ex. 2, at 48:22-49:7).

47.     If there was a necessary upgrade to the Aloha software that would be of some significant expense, corporate would be required to approve it.  (Ex. 2, at 52:1-4).

48.     Mr. Hench brought the receipt problem to the attention of Mr. Gieselman shortly after being notified himself.  (Ex. 8, at 69:18-24).

49.     Mr. Gieselman overheard a conversation about customers complaining about their credit card numbers being displayed on receipts prior to May 15, 2007.   (Ex. 2, at 118:3-18).

50.     The decision to correct Defendant's problem regarding printing receipts with entire credit card numbers was in Mr. Gieselman's hands; Mr. Hench believed he had done everything he could do to solve the problem, and he waited to hear from Mr. Gieselman regarding the credit card problem.  (Ex. 8, at 88:22-89:7).

51.     Mr. Hench knew that until the new software was installed, Defendant's credit card problem would not be fixed.  (Ex. 8, at 111:2-18).

52.     The decision to wait and install the software was at the direction of Mr. Gieselman or Ms. Hance.  (Ex. 8, at 92:5-92:9; 108:25-110:10).

**E.     Defendant Provides Plaintiff a Non-Compliant Receipt**

53.     From May 2007 through August 2007, Defendant continued to print entire credit card numbers on receipts.  (Ex. 7, ¶¶ 177, 179, 181, 183).

54.     On August 29, 2007, it was Defendant's custom and practice (or procedure) to provide consumers a receipt that displayed more than the last five digits of their credit card number or debit card number.  (Ex. 1, ¶ 34).

55.     On August 29, 2007, Plaintiff received from Defendant, at its establishment located at 511 N.W. Barry Road, Kansas City, Missouri 64155, an electronically printed receipt.  (Ex. 1, ¶ 12).

56.     This electronically printed receipt received by Plaintiff from Defendant on August 29, 2007, displayed more than the last five digits of Plaintiff's credit card number and the credit card's expiration date.  (Ex. 1, ¶ 13).

**F.     Defendant Finally Updates its Credit Card System to Comply with FACTA**

57.     From August 2007 through December 2007, Defendant continued to print entire credit card numbers on receipts.  (Ex. 7, ¶¶ 165, 183, 185, 187, 189, 191).

58.     Defendant's software was updated to truncate the credit card receipts in December 2007.  (Ex. 3, at 194:21-195:8).

59.     Each POS system terminal handling credit card or debit card transactions from which Defendant issued receipts was upgraded on December 7 and 10, 2007.  (Ex. 7, ¶ 163).

60.     On December 7 and 10, 2007, Defendant's credit card machines were modified by RDS to truncate the receipts.  (Ex. 7, ¶ 164).

**G.     Defendant Issues Approximately 45,000 Non-Compliant Receipts to Its Customers from December 4, 2006 through December 7, 2007**

61.     On December 4, 2006, it was Defendant's custom and practice (or procedure) to provide consumers a receipt that displayed more than the last five digits of their credit card or debit card number.  (Ex. 1, ¶ 32).

62.     Defendant printed entire credit card numbers on receipts from December 2006 through December 2007.  (Ex. 7, ¶¶ 167, 169, 171, 173, 175, 177, 179, 181, 183, 185, 187, 189, 191).

63.     Between December 4, 2006 and December 7, 2007, there were more than 45,000 credit card transactions at Defendant JP's.  (Doc. #66, Def's. Opp. to Class Cert., attached as Ex. 9, at 2.)

64.     Since December 4, 2006, there are **more than 100 persons** to whom Defendant provided an electronically printed receipt at the point of sale or transaction which receipt displayed more than the last five digits of the person's credit card or debit card number.  (Ex. 1, ¶ 19).

65.     In 2006 and 2007, Defendant did not comply with the requirement that the cardholder copy shall not contain more than the last five digits of the cardholder number.  (Ex. 2, at 64:10-18).

## III.    ARGUMENT

### A.    Summary Judgment Standards

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The moving party is entitled to summary judgment, upon a properly made and supported motion, if the nonmoving party fails to present, by affidavits, depositions, answer to interrogatories, or

admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Summary judgment motions "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Irwin v. Hoover Treated Wood Products, Inc.*, 906 F. Supp. 530, 531 (E.D. Mo. 1995) (quoting *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988)). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In this case, the undisputed facts demonstrate Defendant's willful violation of FACTA, such that summary judgment on liability is proper.

## B. Defendant Indisputably Violated FACTA as a Matter of Law

In 2003, Congress amended the Fair Credit Reporting Act through the amendment of the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681 *et. seq.* ("FACTA"), to assist in the prevention of identity theft as well as credit card and debit card fraud. FACTA provides, in relevant part:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g). FACTA gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006. 15 U.S.C. § 1681c(g)(3).

The uncontroverted evidence establishes that Defendant violated FACTA. Indeed, Defendant readily admits that it provided Plaintiff Steven E. Hammer a non-compliant receipt on August 29, 2007, which displayed more than the last five digits of his credit card number.

(Plaintiff's Uncontroverted Facts ("PUF") ¶ 53-56)  Defendant further admitted that it provided at least 100 other customers with non-compliant receipts after December 4, 2006.  (PUF ¶64)  In fact, Defendant had admitted that it printed entire credit card numbers on receipts in violation of FACTA from December 2006 through December 2007.  (PUF ¶53-65).  Defendant also admitted that it did not begin complying with FACTA until approximately December 7, 2007, more than one year after the final date that all businesses accepting credit cards and debit cards were required to comply with the statute.  (PUF ¶58-60).

Altogether, whether Defendant violated FACTA is not in dispute, and Plaintiff is entitled to summary judgment.

### C.    Defendant Acted Willfully In Violating FACTA as a Matter of Law

In relevant part, FACTA states:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of – (1)(A) any actual damages sustained by the consumer as a result of the failure **or** damages of not less than $100 and not more than $1000.

15 U.S.C. § 1681n(a) (emphasis added).  Accordingly, to recover statutory damages (ranging from $100 to $1,000) under the provisions of FACTA, Plaintiff must demonstrate that Defendant's violation of FACTA was "willful."

The United States Supreme Court recently clarified the meaning of "willful" as used in 15 U.S.C. § 1681n(a).  See *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007).[1]  There, the

---

[1] While *Safeco* dealt with the Fair Credit Reporting Act ("FCRA"), the basis for statutory damages under the FCRA is 15 U.S.C. § 1681n(a), the same statute under which Plaintiff seeks statutory damages for Defendant's violations of FACTA.

Supreme Court held that "willful" as used by 15 U.S.C. § 1681n(a) encompasses a knowing or reckless violation of the law. *Id.* at 56-58, 71.[2]

To establish a "reckless" violation of FACTA, Plaintiff must establish that Defendant's actions entailed, under an objective standard, "an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). As explained by the Supreme Court, a defendant acted recklessly, and therefore, willfully, as contemplated by 15 U.S.C. § 1681n(a), if its conduct not only would be "a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Indeed, recklessness is "something more than negligence but less than knowledge of the law's requirements." *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 726 (7th Cir. 2008).

The requirements of FACTA, however, are not ambiguous or susceptible of conflicting interpretations. *See Edwards v. Toys "R" US*, 527 F. Supp. 2d 1197, 1209 (C.D. Cal. 2007). Courts have consistently held that the plain language of 15 U.S.C. § 1681c(g) "makes it clear that the statute prohibits both the printing of more than the last five digits of the card number and the printing of the expiration date." *Pirian v. In-N-Out Burgers*, 2007 WL 1040864, at *3 (C.D. Cal. Apr. 5, 2007); *see Korman v. Walking Co.*, 503 F. Supp. 2d 755, 760 (E.D. Pa. 2007) (collecting cases that have found the requirements of the statute to be clear).

There cannot be a reasonable dispute as to the material facts necessary to establish Defendant's liability for willful violations of FACTA. The facts clearly demonstrate that Defendant acted recklessly, if not knowingly, in violation of the statute.

---

[2] "[W]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Id.* at 57. "[R]eckless disregard of a requirement of FCRA would qualify as a willful violation ..." *Id.* at 71.

In 2003, Defendant entered into a contract with HPS for credit card processing services. (PUF ¶8-10). In the agreement, Defendant agreed to abide by certain Rules and Regulations. (PUF ¶11-12). The owner acknowledged that he had "received, read, understood and agreed to follow" the Card Acceptance Policies, Procedures, and Terms and Conditions. (PUF ¶12). The Card Acceptance Policies, Procedures, and Terms and Conditions specifically referenced the credit card number truncation requirements, and mandated that Defendant's electronically-printed receipts shall not contain more than the last five digits of the credit card number. (PUF ¶13). Further, from 2003 to 2007, Defendant's corporate office received monthly invoices and merchant statements from HPS that contained numerous references to the credit card number truncation requirements. (PUF ¶14, 16, 17, 21-32). Mr. Gieselman, Defendant's owner, acknowledged that he expected these invoices to be read and reviewed by the corporate office. (PUF ¶18-20). Mr. Gieselman also admitted that an individual at the corporate office was responsible for reviewing and paying such bills. (PUF ¶18-20). Thus, there is no genuine issue of material fact that Defendant was aware of its legal obligation to print receipts that contained no more than the last five digits of the credit card number.

From 2003 until December 4, 2006 (the final deadline to comply with FACTA), Defendant received at least seven (7) statements from HPS that specifically notified Defendant about the credit card number truncation requirements, and urged Defendant to contact the appropriate vendor if its current systems were non-compliant. (PUF ¶21-28). Defendant admits that it received each of these notices, which were dated as follows: (1) January 2005, (2) June 2005, (3) July 2005, (4) November 2005, (5) December 2005, (6) May 2006, and (7) July 2006. (PUF ¶14, 16, 17, 21, 23, 25, 27). Through its monthly billing statements, HPS repeatedly notified Defendant about Defendant's legal obligations to refrain from printing more than the last

five digits of credit card numbers on receipts. (PUF ¶22, 24, 26, 28). Even after the mandatory compliance date of December 4, 2006, Defendant continued to receive HPS invoices that contained notices regarding credit card number truncation requirements. (PUF ¶29-32). Defendant may have received other notices as well. (PUF ¶33). Thus, Defendant's decision to ignore these important notifications provides ample evidence that demonstrate its reckless, if not intentional, disregard of the truncation requirements that became effective no later than December 4, 2006.

Prior to May 15, 2007, Defendant received additional notifications about its failure to comply with FACTA. At that time, Defendant's General Manager, District Manager, and Owner were personally notified about Defendant's failure to comply with the truncation requirements. (PUF ¶35-38, 48-49). In fact, the undisputed evidence shows that Defendant's General Manager was notified by JP's customers, who complained that Defendant was illegally printing the customers' entire credit card number on the receipts. (PUF ¶35-36) The General Manager, Mr. Osborn, immediately notified Mr. Hench, the District Manager. (PUF ¶37-38). At that time, Mr. Hench knew that printing the entire credit card number on receipts was wrong, and that the problem needed to be fixed. (PUF ¶39). Mr. Hench, in turn, notified Mr. Gieselman, the owner. (PUF ¶48) Mr. Gieselman, himself, overheard a conversation about customers complaining that their entire credit card number was being displayed on receipts prior to May 15, 2007. (PUF 49). Prior to May 15, 2007, Mr. Hench then sought and subsequently received a quote from RDS to fix the problem. (PUF ¶40-44). Nevertheless, Defendant continued to print entire credit card numbers on receipts from May 2007 until December 2007, when the problem was finally fixed. (PUF ¶53-65). The decision to wait to fix the problem was made by Mr. Gieselman or Anita Hance, Mr. Gieselman's sister and Defendant's director of operations. (PUF 45-50). Thus,

despite being personally notified of its failure to comply with the truncation requirements, Defendant made no effort to comply with its legal obligations. Defendant's failure to remedy its non-compliance once notified by its own customers of the problem was a knowing violation of FACTA, much less a reckless one.

Defendant admits that it provided Plaintiff with a non-compliant receipt in August 2007. (PUF ¶53-56). Thus, at the time Defendant provided Plaintiff with a non-compliant receipt, it had already received the following notifications regarding the truncation requirements:

(1) Defendant had entered into a contract with HPS that required that it suppress the consumer's entire credit card number and print no more than the last five digits of the credit card number (PUF ¶8-13);

(2) Defendant had received at least nine (9) invoices containing notices from HPS regarding the truncation requirements (PUF ¶21-32);

(3) Defendant's General Manager had been personally notified by more than one customer that Defendant was improperly printing the entire credit card number on receipts (PUF ¶35-36);

(4) Defendant's District Manager and Owner had been personally notified of JP's non-compliance with the truncation requirements (PUF ¶37,38, 48, 49); and

(5) Defendant's District Manager had requested and received a quote from RDS, its point-of-sale vendor, to <u>cure</u> the truncation problem (PUF ¶40-44).

Thus, the issuance of Plaintiff's receipt in August 2007 in violation of FACTA cannot be anything but willful, given Defendant's **<u>actual</u>** knowledge that it was not complying with federal law. Altogether, the undisputed material facts establish that Defendant's actions and inactions are clearly "something more than negligence," and thus, there can be no genuine issue of

material fact that would preclude summary judgment as to whether Defendant committed a willful violation of FACTA. Defendant's deliberate decision to turn a blind eye on its obligations under FACTA, despite being <u>repeatedly</u> and <u>personally</u> notified of its non-compliance does not shield it from liability. *See Safeco*, 551 U.S. at 55-56 (2007) (quoting *Reynolds v. Hartford Financial Servs. Group, Inc.*, 435 F.3d 1081, 1099 (9th Cir. 2006): "'a deliberate failure to determine the extent of its obligations' would not ordinarily escape liability under § 1681n, any more than 'reliance on creative lawyering that provides indefensible answers' would be sufficient to avoid a conclusion that a company acted with willful disregard of the FCRA's requirement.").

Based on the indisputable and overwhelming evidence, no reasonable jury could conclude otherwise. Therefore, the Court should grant Plaintiff partial summary judgment on his claim, and the similar claims of all Class members, that Defendant acted willfully in violation of FACTA as a matter of law.

**D.      Whether Plaintiff Suffered Actual Harm Is Immaterial as a Matter of Law**

Lastly, FACTA does not require that a plaintiff suffer any actual monetary damages (in which they are aware) in order to sue for violations of the act. Again, the relevant provision of FACTA states:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer for an amount equal to the sum of -- (A) any actual damages sustained by the consumer as a result of the failure **or** damages of not less than $100 and not more than $1000.

15 U.S.C. § 1681n(a) (emphasis added).

The statute expressly allows for the recovery of actual damages or statutory damages by use of the disjunctive word "*or*." Thus, the plain language of the statute makes it clear that

actual damages are not a prerequisite to recovery of statutory damages. *See, e.g., Ehrheart v. Lifetime Brands, Inc.*, 498 F. Supp. 2d 753, 755 (E.D. Pa. 2007) ("FACTA does not require that a plaintiff have suffered actual monetary damages in order to sue for violation of the Act."); *Korman v. Walking Co.*, 503 F. Supp. 2d 755, 759 (E.D. Pa. 2007) ("Plaintiff need not allege that she suffered any actual harm, that someone stole her identity. Indeed, Congress implied that some consumers might not suffer 'actual damages' for FACTA violations."); *Ramirez v. MGM Mirage, Inc.*, 524 F. Supp. 2d 1226, 1231 (D. Nev. 2007) ("Every district court to consider the issue has found a plaintiff has standing to pursue a FACTA claim for statutory damages even without showing actual damages.").

Here, Plaintiff seeks ***statutory damages*** for a willful violation of FACTA pursuant to 15 U.S.C. § 1681n(a)(1)(A). (See Complaint, Doc. #1, at ¶10 and Prayer for Relief). Thus, whether Plaintiff suffered actual harm is "not material to the issues in this case" as a matter of law. *Soualian v. International Coffee & Tea, LLC*, 2008 WL 410618, at *4 (C.D. Ca. February 09, 2008) (denying defendant's motion for partial summary judgment as to whether plaintiff was harmed as a result of defendant's alleged FACTA violation). Therefore, Plaintiff is entitled to partial summary judgment on Defendant's liability for willful violations of FACTA, regardless of the absence of any actual damages.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court find, as a matter of law, that: (1) Defendant violated the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g), by printing more than the last five digits of its customers' credit card number on electronically-printed receipts provided to the customers at the point of sale; and (2) Defendant willfully violated FACTA by providing its customers with a non-compliant receipt,

i.e., an electronically-printed receipt containing more than the last five digits of the credit card number. Accordingly, this Court should grant Plaintiff's motion for partial summary judgment on the issue of Defendant's liability in this case.

Dated: April 16, 2010

Respectfully submitted,

WALTERS BENDER
STROHBEHN & VAUGHAN, P.C.

By: **s/R. Frederick Walters**
R. Frederick Walters,  MO Bar #25069
2500 City Center Square
1100 Main Street
P.O. Box 26188
Kansas City, MO 64196
Telephone:     (816) 421-6620
Facsimile:     (816) 421-4747
fwalters@wbsvlaw.com

**ATTORNEYS FOR PLAINTIFF
AND CLASS COUNSEL**

McCLELLAND LAW FIRM
*A Professional Corporation*

Kelly L. McClelland,  MO Bar #27156
Kenneth E. Cox,       MO Bar #51861
Jerome M. Patience,   MO Bar #51965
Ryan L. McClelland,  MO Bar #59343
The Flagship Building
200 Westwoods Drive
Liberty, Missouri  64068-1170
Telephone:     (816) 781-0002
Facsimile:     (816) 781-1984
kmcclelland@mcclellandlawfirm.com
kcox@mcclellandlawfirm.com
jpatience@mcclellandlawfirm.com
ryan@mcclellandlawfirm.com

**ATTORNEYS FOR PLAINTIFF
AND CLASS COUNSEL**

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2010, the foregoing document was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of such filing to the following:

Joseph Gagnon, Esq.
Gagnon Law Firm, LLC
P.O. Box 208
504 Center St., Ste. E
Lathrop, MO 64465
jgagnon@gagnonlawfirm.com

I further certify that on April 16, 2010, the foregoing document was mailed via United States Postal Service to the following non CM/ECF participants:

James K. Borcia, Esq.
Tressler, Soderstrom, Maloney & Priess, LLP
233 South Wacker Drive
Suite 2200 – Sears Tower
Chicago, IL 60606

By: **s/R. Frederick Walters**

**ATTORNEYS FOR PLAINTIFF
AND CLASS COUNSEL**