## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| STEVEN E. HAMMER, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 08-CV-339-FJG ) |
| JP'S SOUTHWESTERN FOODS, L.L.C. d/b/a JOSE PEPPER'S BORDER GRILL & CANTINA; and DOES 1 through 10, inclusive, | ) ) ) ) |
| Defendants. | ) |

### JP'S TRIAL BRIEF

Defendant, JP'S Southwestern Foods, L.L.C. ("JP's"), by and through its attorneys, hereby submits its Trial Brief.

### I. FACTUAL BACKGROUND

JP's is a corporation that owns a single restaurant at 511 NW Barry Road in Kansas City, Missouri doing business as Jose Pepper's Border Grill & Cantina ("Jose Peppers"). JP's is owned by Edward Gieselman and Charles Erwin, but Mr. Erwin has no involvement in the management of JP's restaurant. JP's only business is owning and operating Jose Peppers. Mitch Osborn has been employed as the General Manager of Jose Peppers since June 2004. JP's currently has approximately 60 employees, which includes primarily servers and cooks.

JP's checkout system is referred to as a point of sale ("POS"). When a customer chooses to pay for the meal by credit or debit card, JP's has receipts are printed out, and a customer is asked to sign one. Normally, there are three other copies of the receipt. One receipt JP's gives to the customer, and one it keeps. The signed merchant copy was kept by the restaurant, and the

1

other one was given to the customer for their records.  At that time all of the POS registers at Jose Peppers except the register at the bar printed three credit card receipts, two of which had the customer's credit card number truncated and one of which displayed the entire number.

Mr. Gieselman was unaware of the FACTA truncation requirements for credit cards in 2006 and 2007.  Mr. Gieselman was unaware if the Aloha software that JP's was using in 2006 and 2007 was capable of truncating credit card numbers because JP's did not know that was even an issue.  Mr. Gieselman never read the language regarding truncation requirements in the statements sent by JP's credit card processor, Heartland Payment Systems ("Heartland").  Mr. Gieselman was not aware of the FACTA requirements until after this lawsuit was filed in 2008.

Northstar Restaurants, Inc. ("Northstar") is a company that provides managerial services to JP's, including accounting services which includes the collection of sales receipts and payment of all bills.  Northstar is also owned by Mr. Gieselman.  However, JP's had no right to control Northstar.

Some time in 2007 two customers at Jose Peppers brought to Mr. Osborn's attention their concern with their full credit card numbers appearing on their receipts, and told Mr. Osborn that he should probably look into it.  Prior to that Mr. Osborn was unaware of any requirement that customer credit card numbers be truncated.  Mr. Osborn had never heard of any requirement that customer credit card numbers be truncated until after the customers alerted him to this situation.  As soon as Mr. Osborn learned of the problem he acted to get the issue taken care of.  After the customers alerted Mr. Osborn to the issue, Mr. Osborn discussed this matter with JP's vendor representative, Mitch Baldwin of Retail Data Systems of Kansas City ("RDS").  Mr. Osborn, possibly with Mr. Baldwin's assistance, developed a temporary solution to the issue.  Until a permanent solution could be implemented with the printing Mr. Osborn instituted a procedure at

the restaurant that only the receipts with the truncated numbers should be given to the customers.[1]

JP's new procedures were given to the servers before every shift for a week. This policy remained in effect until JP's updated the software on the credit card machine to truncate the numbers on all of the receipts. After the issue was looked into Mr. Osborn learned that none of the other restaurants that were owned by Mr. Gieselman and to which Northstar provided services had this issue because JP's was using a POS system that was purchased from the prior owner of the restaurant that previously existed at the Jose Peppers location. RDS eventually informed JP's that a quick solution to the printing issue was not possible due to the type of POS terminals and software that JP's was using at that time, and that JP's needed not only new software installed but also new POS hardware installed because the software needed to take care of this issue could not be supported by the existing hardware at the restaurant.

At some point in 2007 Hench spoke with RDS' Mitch Baldwin. Hench told Baldwin that JP's just wanted the software upgraded, and it did not need an entire new POS system. Mr. Baldwin told Mr. Hench that JP's could not just upgrade the software without getting a whole new system. Mr. Hench still did not believe this was correct. Due to the question of whether RDS was correct that JP's needed a brand new POS system, along with the large expense involved with such a new system, Northstar pursued other bids for the new POS terminals and hardware that was being proposed by RDS. RDS also informed JP's that the new system would not only involve substantial expense but also disruption to the restaurant in terms of the installation of the software and hardware and having to retrain the employees on the new system.

---

[1] JP's has reviewed the receipt produced by Plaintiff in this case. If the customers had alerted Mr. Osborn to the situation prior to Plaintiff's visit in August, his getting a receipt with a full credit card number could only be attributed to either human error with JP's server giving him the wrong receipt and not following the new protocol or was possibly Plaintiff sitting at the bar, which is indicated on the receipt.

3

On May 15, 2007 RDS sent a quote to Hench of Northstar for the new system. The cost of the quote was $13,485 plus sales tax, which would have put the price tag in excess of $15,000. Since this amounted to a significant amount of money, Mr. Hench had no authority to approve RDS' quote. As a result of this issue Mr. Hench recommended that Northstar go to a different vendor. However, all of the other Northstar restaurants used RDS and Aloha software. Thus, getting a different system for JP's was problematic because all of the other restaurants to which Northstar was providing services were all using RDS and the Aloha system or a system like it. Mr. Hench's recommendation back in May 2007 was not to buy a new system as RDS had stated was necessary. Hench felt that RDS was telling them was incorrect. Hench's recommendation was to only upgrade the software to fix the problem, not to buy an entire new system. RDS wanted to sell an entire system and not just upgrade the software. Hench thought RDS was wrong to try and sell an entire new system rather than upgrading the software and RDS was "being pigs".

RDS also informed JP's that the new system would print different types of receipts and would require that new procedures be put in place at the restaurant, which would require the staff at the restaurant to be trained on the new system. On or about December 6, 2007, RDS installed the new POS terminals and software at Jose Peppers. After RDS' December installation, all of the receipts printed at Jose Peppers contained truncated credit card numbers.

JP's net income for 2006 was a negative $36,091.86, and for 2007 was $2,635.09. Due to losses in the previous years JP's had a negative equity in 2007. As of December 2007 JP's total equity was a negative $28,947.49.

After he retired from working in late 2006 Hammer started investigating the issue of identity theft. Despite the fact that he allegedly began investigating identity theft back in 2006,

4

Hammer claims that he did not learn of FACTA until after he spoke with his counsel in this case in 2008. After his counsel told him about FACTA he went back and reviewed his credit card receipts and found some that were not compliant. Hammer filed this lawsuit on May 6, 2008. Including this case, Hammer filed thirteen FACTA lawsuits in this District.

No one other than Hammer has ever asserted a FACTA claim against JP's. The receipt at issue in this case was received by Hammer from JP's, immediately brought back to his house and stored after his meal there on August 29, 2007, and since it was found by Hammer during his search has been in either his possession or the possession of Hammer's counsel. Hammer did not suffer any harm as a result of receiving the subject credit card receipt from JP's, and he has never been the victim of any type of identity theft. Hammer knows of no class member that suffered any actual damages or identity theft as a result of receiving a non-compliant receipt from JP's.

Plaintiff seeks statutory damages of "not less than $100 and not more than $1000" for each violation and thus seeks statutory damages in the range of between $4.5 million and $45 million, plus punitive damages, attorneys' fees and costs. Plaintiff classifies the statutory damages he is seeking from JP's as a "statutory penalty" and "statutory punishment".

## II. ARGUMENT

### A. Purpose of FACTA

FACTA was passed in 2003 as an amendment to the FCRA. The FCRA was enacted in 1970 in order to protect consumers from potential abuses of the credit reporting industry. FACTA was enacted to address identity theft by establishing procedures to alert consumers about fraud and identity theft issues, providing greater access to consumer credit reports, and establishing certain rights for identity theft victims. *Broderick, v. 119TCbay, LLC,* 670 F.Supp.2d

5

612 (W.D. Mich. 2009); 15 U.S.C. §§ 1681c-1, 1681g, 1681m.  Truncation of credit card numbers was one of many FACTA provisions designed to address these issues.  Reading the statute as a whole, the statute was designed to protect consumers from exposure to actual harm of real identity theft.  *Id*.

FACTA prohibits the *providing* of improper receipts, not the *printing* of improper receipts. 15 U.S.C. § 1681c(g) ("[n]o person that accepts credit cards or debit cards…shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."); *Grabein v. Jupiterimages Corp.*, 2008 U.S. Dist. LEXIS 65828, *5 (S.D.Fla.) ("FACTA applies "only to paper receipts provided to a customer at the point of sale").

**B.      JP's Substantially Complied With FACTA**

After Mr. Osborn instituted JP's new procedures JP's was in substantial compliance with FACTA.  The first four digits of the credit card numbers simply identify the issuer of the credit card, which is publicly available information and is permitted to be included on a receipt.  The truncated portion of the receipt contains the customer specific information provided by the issuer.

There is no evidence that this type of truncation raises any higher security threat than printing only the last five digits of the credit card number.  Consequently, JP's was in substantial compliance with FACTA in that the security sensitive numbers were in fact truncated. *Kabakjian v. U.S.*, 267 F.3d 208, 213 (2001); *Prussner v. U.S.,* 896 F.2d 218 (7th Cir. 1990). Substantial compliance with a statute means compliance in respect to essential matters necessary to assure every reasonable objective of the statute.  *Tank v. Chronister,* 941 F.Supp. 969 (D. Kan. 1996); *In re Habeas Corpus of Santore*, 28 Wn. App. 319, 327, 623 P.2d 702 (1981).  Here JP's

temporary solution was in substantial compliance with FACTA. This is evidenced by the fact that there is no evidence that anyone suffered any identity theft as a result of the JP's actions.

**C.     JP's Did Not Willfully Violate FACTA**

The Fair Credit Reporting Act imposes liability on a consumer reporting agency in favor of a consumer for willfully failing to comply with a requirement imposed under the Act with respect to that consumer. The term "willfully" means an omission or failure to do an act voluntarily and intentionally, and with specific intent to fail to do something the law requires to be done, in other words, with a purpose either to disobey or disregard the law. *Federal Jury Practice and Instructions (5th Ed.)*, Vol. 3A, Instruction No. 153.39.

Much of the evidence relied upon by Plaintiff relates to the boilerplate truncation language contained in billing documents received by Northstar and paid by Northstar on behalf of JP's. However, there is no evidence that anyone from JP's or Northstar ever read this language. While Plaintiff may argue that this language should have been read, at most such would establish a claim for negligence, not willfulness.

JP's did not willfully or recklessly violate any law, including FACTA. JP's printing of the receipts with the full credit card numbers and expiration dates was done without JP's knowledge of any change in the law. After the issue was discovered JP's acted immediately to deal with the problem. The evidence shows that JP's instituted a new procedure to only provide its customers with truncated credit card receipts as soon as it learned of the issue. There is also evidence that this new procedure remained in place until the new POS terminals and software were installed later in 2007. JP's was not aware of the specific FACTA requirements until after this lawsuit was filed in 2008.

7

Case 4:08-cv-00339-FJG   Document 167   Filed 07/27/10   Page 7 of 14

After the two customers brought the issue to Mr. Osborn's attention, he acted to get the issue taken care of. Mr. Osborn discussed this matter with RDS and developed a temporary solution to the issue. Until a permanent solution could be implemented with the printing Mr. Osborn instituted a procedure at the restaurant that only the receipts with the truncated numbers should be given to the customers. JP's new procedures were given to the servers before every shift for a week. This policy remained in effect until JP's updated the software on the credit card machine to truncate the numbers on all of the receipts.

After the issue was looked into Mr. Osborn learned that none of the other restaurants that were owned by Mr. Gieselman and to which Northstar provided services had this issue because JP's was using a POS system that was purchased from the prior owner of the restaurant that previously existed at the Jose Peppers location. RDS eventually informed JP's that a quick solution to the printing issue was not possible due to the type of POS terminals and software that JP's was using at that time, and that JP's needed not only new software installed but also new POS hardware installed because the software needed to take care of this issue could not be supported by the existing hardware at the restaurant. JP's responsive actions to customer complaints and implementation of a temporary fix to the credit card truncation problems are evidence that JP's did not willfully violate FACTA.

### D. Plaintiff Suffered No Actual Harm or Damages

Plaintiff only seeks statutory damages in this matter and does not allege that he was actually harmed. In fact, during his deposition, Plaintiff admitted that he has in fact suffered no actual harm whatsoever. Moreover, the subject receipt has always been in his or his attorney's control. He received the receipt on August 29, 2007, and then in 2008 provided it to his attorney. Thus, there is no possibility that Plaintiff will ever be injured by the conduct alleged in the Complaint. Similarly, Plaintiff knows of no one that suffered any identity theft because of JP's

actions and there is no evidence that any person has suffered or will ever suffer any actual harm because of JP's conduct.

When deciding what amount of statutory damages that should be awarded to Plaintiff, the jury must consider the actual harm suffered by the Plaintiff in relation to the amount awarded. If the jury finds that statutory damages is grossly excessive in relation to the actual harm suffered by Plaintiff, then the jury's verdict must be in favor of JP's. *Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003); *State Farm Mutual Auto. Ins. Co. v. Campbel*l, 538 U.S. 408 (2003).

**E.     Plaintiff Lacks Standing**

Before a plaintiff may recover in federal court, he must establish some threatened or actual injury resulting from the putatively illegal action. *Amburgy v. Express Scripts, Inc.*, 671 F.Supp.2d 1046 (E.D. Mo. 2009). In class action litigation, the named plaintiff purporting to represent a class must establish that he personally has standing to bring the cause of action. *Id*. If the named plaintiff cannot maintain the action on his own behalf, he may not seek such relief on behalf of the class. *Id.; Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1196-97 (8th Cir. 1998).

To show Article III standing, a plaintiff has the burden of proving: (1) that he suffered an "injury-in-fact," (2) that a causal relationship exists between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision. *Id.* Abstract injury is not enough to demonstrate injury-in-fact. *Id.* Plaintiff must establish that he has sustained or is in immediate danger of sustaining some direct injury as a result of the challenged conduct. *Id.* The injury or threat of injury must be concrete and particularized, actual and imminent; not conjectural or hypothetical. *Id*.

9

Here Plaintiff has suffered no harm as a result of JP's actions. Moreover, many implausible "if's" would have to come to pass before Plaintiff could suffer any such harm. As a result, Plaintiff has no standing to pursue the claim set forth in his Complaint. Plaintiff admits that he has suffered no harm. Without an actual injury, he has no standing to sue in federal court according to Article III of the Constitution. FACTA cannot provide him with standing and override the Constitution. Plaintiff cannot recover damages from JP's since he has conceded that he has not been harmed in any manner.

### F. The Damages Sought By Plaintiff Are Excessive And Violate Due Process

FACTA creates a remedy that threatens to drive legitimate businesses such as JP's out of existence or into bankruptcy by imposing statutory damages that are wildly disproportionate to any conceivable actual damage suffered by any person, including Hammer. The statute imposes $100 to $1,000 in statutory damages for willful violations. Additionally, a plaintiff seeking statutory damages may recover punitive damages plus attorneys' fees and costs. Thus, JP's faces a terrible (and business ending) exposure for doing something when it was receiving no – zero – benefit for doing it. FACTA's damages scheme unconstitutionally imposes a grossly excessive punishment and thus violates the Fifth and Eighth Amendments to the United States Constitution. *See Central Hudson Gas & Electric Corp. v. Public Services Com'n*, 447 U.S. 557 (1980). A statutory penalty violates due process where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable. *St. Louis, Inc. Mt. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919).

Courts have recognized the due process implications of imposing excessive statutory damages. *See, e.g., Parker v. Time Warner Entm't Co.*, 331 F.3d 13 (2nd Cir. 2003). "A claim of this sort creates a tension between the statutory provisions for minimum damages and the Rule 23 provisions for class actions that probably was not within the contemplation of those who

promulgated either the statute or the rule." *Id.* at 26. "I do not believe that in specifying a $1,000 minimum payment for … violations, Congress intended to expose [violators] to liability for billions of dollars." *Id.* at 27. This reasoning also applies here – JP's may be assessed damages in the millions of dollars for including credit card receipts to card holders that as in Hammer's case caused no actual damages. Judgment in favor of JP's is proper here because the statutory damages sought by Plaintiff are "grossly disproportionate" to any harm and thus implicate constitutional concerns. *Saunders,* 2007 U.S. Dist. LEXIS 97193, *8.

When viewed against the complete absence of harm, the potential damages that FACTA would allow in a class setting in a case such as this are mind-boggling. Given the number of potential class members JP's would be subject to a potential judgment in excess of $45,000,000, plus punitive damages and attorneys' fees and costs. Indeed, even the minimum statutory award would be in excess of $4,500,000, a staggering amount to a small company like JP's which has a negative equity and would go out of business even if a fraction of the minimum potential statutory award were entered. Courts have not turned a blind eye to the unfairness of this result. *See Azoiani v. Love's Travel Stops*, 2007 WL 4811627, *5 (C.D.Cal.) ("putting a company out of business for failing to [comply with FACTA] especially without proof of actual harm, is the type of undesirable result that the Advisory Committee…warned against."). *Cf. State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) ("The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor"); *BMW of North America v. Gore*, 517 U.S. 559 (1996) ($2 million dollar punitive damage award was grossly excessive and therefore exceeds the constitutional limit where compensatory damages were $4,000); *Lincoln v. Case*, 340 F.3d 283, 293 (5th Cir. 2003) ("few awards exceeding a single-digit ratio between punitive and compensatory damages, to a

11

significant degree, will satisfy due process"). Such an award would be especially inappropriate here where JP's has a negative equity and cannot afford to pay any substantial judgment. Thus, Plaintiff effectively seeks to put JP's out of business and its 60 employees out of work for actions that resulted in no damage to anyone. This would not only violate due process, but is simply morally and ethically wrong.

G. **Business Related Transactions**

Plaintiff's class seeks statutory damages for all persons who received a non-compliant receipt. However, FACTA limits recovery of statutory damages to consumer cardholders and does not allow for such damages for business card holders or for business related transactions. 15 U.S.C. § 1681n; *Pezl v. Amore Mio,* 259 F.R.D. 344 (2009); *Najarian v. Charlotte Russe, Inc.*, 2007 U.S. Dist. LEXIS 59879 (C.D.Cal.); *Najarian v. Avis Rent A Car Sys.*, 2007 U.S. Dist. LEXIS 59932 (C.D. Cal.); *Evans v. U-Haul Co. of Cal.*, 2007 U.S. Dist. LEXIS 82026 (C.D.Cal.); *Medrano v. Modern Parking Inc.*, 2007 U.S. Dist. LEXIS 82024 (C.D.Cal.)*;*.

JP's frequently has customers who visit the restaurant for business purposes or use business credit cards to pay. JP's is entitled judgment in its favor on all business related transactions.

H. **Class Members Who Were Provided A Receipt That Were Not The Cardowner**

The class is limited to those individuals who were allegedly provided a non-compliant receipt by JP's. However, as discussed above, the purpose of FACTA is to protect the security of cardowners, not those who were provided receipts who were not cardowners. Many of the subject receipts were signed by those who were not the cardowner. There is no basis to provide any relief to such individuals and judgment is also proper as to all of these class members.

12

### III. CONCLUSION

WHEREFORE, Defendant JP'S Southwestern Foods, L.L.C. respectfully requests this Court enter judgment in its favor and against Plaintiff, plus costs.

Dated: July 27, 2010

                                               JP'S SOUTHWESTERN FOODS, L.L.C. d/b/a
                                               JOSE PEPPER'S BORDER GRILL & CANTINA

                                               By: /s/Joe Gagnon
                                                        One of Its Attorneys

Joe Gagnon
Gagnon Law Firm, LLC
P.O. Box 208
504 Center Street, Suite E
Lathrop, MO 64465
(816) 740-4541

James K. Borcia
David O. Yuen
Tressler LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606
(312) 627-4000

## CERTIFICATE OF SERVICE

       I hereby certify that on July 27, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

| | |
|---|---|
| Ryan L. McClelland | Fred Walters |
| The Flagship Building | Walters. Bender. Strohbehn & Vaughan. P.C. |
| 200 Westwoods Drive | 2500 City Center Square |
| Liberty, MO 64068- 1170 | 1100 Main Street |
| | Kansas City, MO 64196 |

                                                         s/ Joe Gagnon

Joe Gagnon
Gagnon Law Firm. LLC
P.O. Box 208
504 Center Street. Suite E
Lathrop, MO 6446;
(816) 740-4541

James K. Borcia
Tressler LLP
233 South Wacker Drive, 22nd Floor
Chicago. IL 60606
(312) 627-4000