# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| STEVEN E. HAMMER, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 08-0339-CV-W-FJG |
| JP'S SOUTHWESTERN FOODS, L.L.C. d/b/a JOSE PEPPER'S BORDER GRILL & CANTINA; and DOES 1 through 10, inclusive, | ) ) ) ) |
| Defendants. | ) |

# ORDER

Pending before the Court are (1) Defendant's Motion to Decertify Class (Doc. No. 215); (2) Plaintiff's Motion to Strike Defendant JP's Reply Suggestions (Doc. No. 226); (3) JP's Motion for Leave to File Reply Suggestions in Support of its Motion to Decertify Class (Doc. No. 227); and (4) Plaintiff's Motion for Reconsideration of Order on Notice (Doc. No. 219).

**I.   Defendant's Motion to Decertify Class (Doc. No. 215); Plaintiff's Motion to Strike Defendant JP's Reply Suggestions in Support of its Motion to Decertify Class (Doc. No. 226); and JP's Motion for Leave to File Reply Suggestions in Support of its Motion to Decertify Class (Doc. No. 227)**

A.   Motions regarding lateness of defendant's reply suggestions

As an initial matter, the Court must determine whether to consider defendant's reply suggestions, which were filed one day late (at approximately 7 a.m. the day after they were due). Plaintiff filed a motion to strike the reply suggestions (Doc. No. 226), noting that defendant did not request prior leave of court to file the reply suggestions out of time. Plaintiff notes the Court previously cautioned the parties "that any future pleadings that fail to conform to the rules of this Court and which are filed without leave of Court will be stricken." See Doc. No. 85. Defendant responded to plaintiff's motion by filing its own motion for leave to file its reply (Doc. Nos. 227 (motion) and 228 (response to plaintiff's

motion)). Defendant indicates plaintiff cannot allege any prejudice as a result of defendant filing its reply the morning after it was due. Defendant indicates that computer issues prevented it from timely filing the reply on November 4. See Doc. No. 227. Plaintiff replies to its own motion (Doc. No. 232) and responds to defendant's motion (Doc. No. 231) that defendant has not specified the type of "computer issues" that prevented it from making a timely filing, and defendant's counsel should have the resources available to it to make a timely filing. Defendant replies to its motion for leave (Doc. No. 233) that it has demonstrated excusable neglect for the late filing pursuant to FRCP 6(b). Defendant states (1) there is no danger of prejudice to plaintiff, in that the reply was filed mere hours after it was due; (2) there is very little delay and no impact on the judicial proceedings; (3) the reason for the delay was that JP's counsel had computer problems that were outside of his control on the day that the filing was due, and as a result he was unable to finalize the filing the day it was due; and (4) defense counsel acted in good faith by filing the reply the morning after the computer problems were resolved. See Coleman v. Blue Cross Blue Shield of Kan., 487 F.Supp. 2d 1228, 1234-1235 (D. Kan. 2007) (discussing standard for demonstrating excusable neglect).

After considering the parties' arguments, the Court will **DENY** plaintiff's motion to strike (Doc. No. 226), and will **GRANT** defendant's motion for leave to file (Doc. No. 227). The Court will consider defendant's reply suggestions to be properly filed. However, defendant is **strongly cautioned** to request leave prior to the expiration of deadlines in the future.

  B. Motion to decertify

Defendant moves to decertify the class in this case (Doc. No. 215). Defendant notes that the court can always alter, or revoke, class certification at any time before final judgment is entered should a change in circumstances render a class action no longer appropriate. General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 160 (1982).

However, to prevail on a decertification motion, defendant "faces a heavy burden because doubts regarding the propriety of class certification should be resolved in favor of certification." Gonzales v. Arrow Fin. Serv. LLC, 489 F.Supp.2d 1140, 1154 (S.D. Cal. 2007); see also Gordon v. Hunt, 117 F.R.D. 58, 61 (S.D. N.Y. 1987).

   1. Individual Issues

Defendant states that there are many material individual issues that have arisen, which make class treatment unmanageable. Defendant states these issues include: (1) willfulness; (2) amount of statutory damages; (3) business or consumer credit card, or business or consumer transactions; and (4) whether the cardowner was provided a receipt.

Plaintiff responds that these issues were already considered by the Court and rejected in its Order granting certification. Plaintiff states that the primary questions with respect to plaintiff's claims are (1) whether defendant's alleged standardized practice of failing to provide properly truncated receipts violated FACTA; and (2) whether defendant's failure to do so was willful. Plaintiff indicates these are questions subject to generalized proof on a class-wide basis, and predominate over individual issues.

In reply, defendant argues: (1) defendant's process for handing out receipts was not standardized, but changed during the subject time period, and thus whether defendant acted willfully might change at different periods of time in the class period; (2) with respect to the amount of actual harm, defendant states it will be motivated to demonstrate that plaintiff's are entitled to statutory damages on the lower end of the spectrum, whereas plaintiff will be motivated to demonstrate higher damages, and thus individual inquiries are required to determine the proper award; (3) with respect to standing issues (business v. consumer, cardowner v. non-cardowner), defendant states it has the right to cross-examine class members on these issues to determine whether the criteria are met, and cannot rely on a claim form.

The Court finds that the class should not be decertified for these reasons. The

willfulness determination will turn on an examination of what <u>defendant</u> did over time, and will not lead to an examination of each individual who received a receipt. Further, just because the Court will allow defendant to put on evidence of no actual harm to members of the class, that does not mean that defendant is entitled to mini-trials of all class members. Finally, with respect to issues of standing, the Court finds that a claim form would be acceptable to rely upon to determine if the purported class member has a claim; otherwise, no class action would ever be workable.

### 2. Lack of superiority

Defendant states that Rule 23(b)(3) provides several non-exclusive factors to consider in the superiority inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

Defendant indicates that even if plaintiff prevails, the class is unlikely to recover any damages (indicating that defendant has a negative equity currently). See <u>Barnett v. Experian Information Solutions, Inc.</u>, 236 F.R.D. 307 (E.D. Tex. 2006) (class decertified "given the limited insurance coverage and the bleak financial condition" of the defendant, "any hope of recovery is speculative at best"); <u>Leysoto v. Mama Mia I, Inc.</u>, 255 F.R.D. 693 (M.D. Fla. 2009) (finding "the threat of annihilation associated with certification does not serve the purpose of the legislation, and moreover, is simply unnecessary to effectively enforce the Act and compensate the victims of identity theft." <u>Id.</u> at 699.) Defendant also notes that the Court has granted defendant's motion in limine regarding the personal wealth of JP's owners, who are not liable personally for any potential judgment in this case. Furthermore, defendant argues that the Court should not wait until after trial to deal with the annihilating nature of the damages sought by plaintiff.

Plaintiff responds that (1) the issue of annihilating damages was previously

considered and rejected both on summary judgment and at the class certification stage; (2) since the Court's ruling on class certification, the Ninth Circuit has rendered an opinion in Bateman v. American Multi-Cinema, Inc., 623 F.3d 708, 721-22 (9th Cir. 2010), which explicitly holds that the potential damages facing a defendant for FACTA violations is not an appropriate factor to consider on class certification; (3) defendant's argument that the class will be unlikely to recover any damages is simply a restatement of the "annihilating damages" argument, and the cases cited by defendant are inapposite. Plaintiff argues that defendant here has considerable assets and significant insurance coverage, and has given the court no indication that bankruptcy is imminent.

Defendant replies that the prospect of a *de minimis* recovery is a reason to decertify a class. Gradisher v. Check Enforcement Unit, Inc., 209 F.R.D. 392, 393-94 (W.D. Mich. 2002). Defendant indicates that its financial statements show it has no significant assets, and as for insurance coverage, one carrier (for the first four months of the class period) has denied coverage outright, and the other carrier has issued a reservation and taken the position that if plaintiff proves that JP's willfully violated FACTA, that will negate any insurance coverage under its policy. Defendant further indicates that the Bateman court specifically indicated its holding would not necessarily apply when a defendant has demonstrated that the potential liability would bankrupt the company. 623 F.3d at 723. Additionally, in Stillmock v. Weis Markets, Inc., 385 Fed. Appx. 267, 276-82 (4th Cir. 2010), the concurring opinion provided that the district court has wide discretion to de-certify, and it was not Congress' intention to bankrupt an entire business over a technical statutory violation.

After considering the parties' arguments, the Court finds that the class should not be decertified for this reason. Most of defendant's arguments previously were considered by the Court and rejected. Furthermore, the Court is not convinced that defendant has sufficiently demonstrated at this time that plaintiff would receive only a *de minimis* recovery.

### 3. Lack of Manageability

Defendants indicate the class is unmanageable under Rule 23(b)(3), as (1) individual issues prevail (see discussion above); (2) plaintiff is unable to identify class members, as plaintiff will not be sending individual notice by mail, but will instead be attempting publication notice; and (3) plaintiff delayed in providing class notice.

Plaintiff responds that defendant's arguments are simply a restatement of its opposition to plaintiff's proposed notice plan, and the Court has already ruled that notice could be provided to class members via publication (Doc. No. 211). Plaintiff also indicates that, at this time, the Court has made no class-wide determination on the merits, and plaintiff and defendant together filed a joint motion to delay class notice (Doc. No. 218), which was granted.

Defendant replies that the Court has already made a class-wide determination on the merits, granting in part defendant's motion for summary judgment on class members who used business credit cards or made purchases for business purposes.

The Court finds that the class should not be decertified for these reasons. First of all, the Court's order on granting in part defendant's motion for summary judgment as to business cardholders or those who made purchases for business purposes is not really a class-wide determination on the merits. Instead, it is a refinement of the class definition. Further, the delay in notice is (at least in part) due to actions by both sides. Individual issues do not make this class unmanageable, as detailed by the Court above. Finally, publication notice is sufficient and appropriate in this case.

Therefore, for all the foregoing reasons, defendant's motion to decertify the class (Doc. No. 215) is **DENIED.**

## II. Motion for Reconsideration of Order on Notice (Doc. No. 219)

Plaintiff asks the Court to reconsider the following portions of its order on notice. In particular, plaintiff asks the Court to reconsider (1) frequency of publication; (2) type of

publication; (3) content of the publication; (4) posting at defendant's restaurant; (5) bearer of notice costs; and (6) publication deadline of October 11, 2010.

Plaintiff indicates he could not have anticipated an Order requiring him to publish notice for 60 consecutive days in two daily publications. Thus, plaintiff states he offers alternative notice requirements that will satisfy the Court's desire to notify absent class members which would also reduce the cost of notice, make the notice more understandable, and not reduce the readership.

    A.    Frequency of Notice

Plaintiff argues the frequency of notice is unduly repetitive, cost-prohibitive, inconsistent with FACTA jurisprudence, and constitutionally unnecessary. Plaintiff notes that previous in previous FACTA actions, courts approved of notice limited to one-time or two-time publications. See Cases cited at pp. 5-6 of plaintiff's motion (Doc. No. 219). Plaintiffs suggest that an exorbitant number of publications is cost-prohibitive to the class action process, noting that placing plaintiff's long-form notice for 60 days in both the Kansas City Star and the Daily Record will cost approximately $86,000. Plaintiff states that the cost of notice will significantly reduce any benefits obtained by the class.

Plaintiff suggests two publication alternatives: (1) one publication for eight consecutive days, Sunday through the following Sunday (reaching both households that read the daily or weekend editions of the paper), or (2) one weekday and one Sunday publication for four consecutive weeks, which will similarly reach those households that read either the daily (4 times) or weekend editions (4 times) of the paper.

In response, defendant notes (1) plaintiff's reliance on settlement classes (with one-time or two-time notice) is misplaced, as in those cases defendants agreed on the notice protocol; (2) frequency of notice publication is not an abuse of discretion, as a lengthy notice is necessary due to the uncertainty as to whether class members will see notice in the limited publication periods suggested by plaintiff; and (3) cost of notice is not

7

disproportionate to recovery, as the plaintiff class seeks between $4.5 million and $45 million, in addition to punitive damages, attorneys' fees and costs. Defendant states there is no basis for reconsideration.

After considering the parties' positions, the Court will **GRANT** plaintiff's motion for reconsideration on this issue. The Court **DIRECTS** plaintiff to publish his long-form notice in the Kansas City Star for one Wednesday and one Sunday publication for four consecutive weeks.

      B.      Publication in the Daily Record

Plaintiff argues that publication in the Daily Record is cost prohibitive and ineffective. Plaintiff states that, according to the Daily Record, its daily circulation is approximately 200 individuals, with the actual daily readership estimated at 1,500 individuals. See Ex. 14 to Doc. No. 219. Plaintiff presumes that most of these readers are also readers of the Kansas City Star, so publication to the Daily Record would be duplicative. Plaintiff states that eliminating the notice requirement in the Daily Record would save $23,187.60.

Defendant responds that publication notice in the Daily Record is proper, as class members or their counsel may read the Record and not the Star. Defendant further notes that many of the cases cited by plaintiff require publication in national publications, such as USA Today, in order to cover class members who do not live in or who have moved from the area where the occurrence took place.

Plaintiff replies that publication in the Daily Record provides no additional benefit yet will result in substantial costs. Plaintiff further notes "Publications that are likely to be read by class members should be selected. Financial and legal journals . . . are not likely to be read by many members of the general public." Manual for Complex Litigation (3d ed. )§ 30.211. Plaintiff says publication in the Daily Record will drive up the costs of litigation with no corresponding benefit.

After considering the parties' arguments, the Court will **DENY** plaintiff's motion to the

extent that it seeks to remove the requirement of publication in the Daily Record in its entirety. Instead, the Court reconsiders its previous Order, and **DIRECTS** plaintiff to publish his long-form notice in the Daily Record one day per week for four consecutive weeks.

      C.      Plaintiff's proposed plain language summary notice

Plaintiff notes that the Court approved plaintiff's proposed long form notice with minor revisions. Plaintiff indicates he originally proposed using a long form notice as he anticipated it would be used for a one-time publication. However, plaintiff indicates that long form notices "are generally not used for publication purposes. Long-form notices are cost-prohibitive, and contain more information than is constitutionally required, and may be more confusing to the average reader. Instead, a short-form or 'summary' notice is typically used for notice publications." See Doc. No. 219, p. 9. Plaintiffs indicate a short form notice can direct absent class members to plaintiff's counsel or to a website for more information. Plaintiff further indicates that it would be less expensive to publish a short form notice.

Defendant responds that there is no basis to reconsider the long form notice, which was proposed by plaintiff. Defendant says it is absurd for plaintiff to request reconsideration of the form of notice proposed by plaintiff himself. Defendant indicates plaintiff should be bound by his previous position, and further notes that the short form summary notice proposed by plaintiff fails to provide all the information that plaintiff previously suggested was proper.

Plaintiff replies that it now believes its "plain language" notice would actually be more effective to notify and educate class members about the lawsuit, and notes that the short form notice was drafted using the FJC's "Illustrative" Forms of Class Action Notices. Plaintiff indicates the costs of publishing plaintiff's plain language notice for 60 days in both the Daily Record and the Kansas City Star is approximately $30,000 (versus over $80,000

9

for the long form notice)

After considering the parties' positions, the Court **DENIES** plaintiff's motion for reconsideration on this issue. In particular, plaintiff ought to have proposed a "plain language" notice in his original motion if he truly wished to use such a notice format.

D.   Notice posting at defendant's restaurant

Plaintiff notes that the Court's original order required "notice shall be posted at defendant's place of business for 60 days. Plaintiff shall provide copies of the notice to defendant for defendant to make available to its customers upon request." Plaintiff indicates that Court did not suggest "where" or "how" defendant is required to post notice. Plaintiff now suggests that the Court enter a modified Order, requiring (1) plaintiff to provide defendant with a standard poster-sized notice (22" by 28") and easel, and require that defendant place such poster-sized notice and easel in a conspicuous location for 60 days; (2) defendant post such notice at its entrance or entry-way area of its restaurant; and (3) defendant file an affidavit with the Court, evidencing the fact that the notice was published consistent with the Court's orders.

Defendant responds that there is no basis for reconsideration of notice posting. Defendant states none of these arguments are new and could have been presented before.

Plaintiff replies that the Court should clarify its Order; otherwise, defendant could comply with the wording of the Court's Order by posting the notice in an inconspicuous location.

Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**. To the extent plaintiff wants poster-sized notice or notice posted in a specific location within the restaurant, he should have requested that in his original motion. That request, therefore, is **DENIED**. However, the Court modifies its previous order to provide that defendant post notice in a <u>conspicuous</u> location. Further, defendant shall submit an affidavit regarding its posting to the Court, as will be more specifically ordered below.

10

E. Defendant bearing cost of notice

Plaintiff notes that the Court ordered that plaintiff bear the costs of notice in its September 20, 2010 Order. Plaintiff requests the Court reconsider, and shift the costs in whole or in part because defendant's liability has been established. Plaintiff notes that the Court's order on summary judgment ruled that the receipt provided to plaintiff violated FACTA in that it contained plaintiff's entire credit card number. Plaintiff states that he has thus "partially succeeded" on the merits of the action.

Defendant responds that plaintiff's suggestion further supports JP's view that this class should be de-certified as plaintiff has demonstrated he is not a proper class representative. Defendant notes that liability has not been established against JP's, noting that the Court specifically rejected plaintiff's motion for summary judgment on the issue of liability; the Court only found there was a technical violation of FACTA with respect to plaintiff's receipt.

The Court concurs with defendant's assessment that plaintiff's partial success on summary judgment to be minimal, at best. This does not justify shifting the burden for bearing cost of notice to defendant. Plaintiff's motion for reconsideration on this point will be **DENIED.**

F. The publication deadline

Plaintiff notes both parties moved to extend class notice (Doc. No. 218). That motion was granted on October 13, 2010 (Doc. No. 220), and the notice deadlines thus need to be revised.

Accordingly, the notice protocol and the corresponding deadlines are as follows:

(1) Plaintiff shall publish his long-form notice in the Kansas City Star eight times (on four consecutive Wednesdays and Sundays), and in The Daily Record once weekly for four consecutive weeks;

(2) Defendant shall post the long-form notice in a conspicuous location in its

(3) restaurant for 60 days, and plaintiff shall provide copies of the notice to defendant for defendant to make available to its customers upon request;

(3) Notice shall be published in all formats discussed above beginning no later than **February 2, 2011.**

(4) Within ten (10) calendar days of the completion of publication in the Kansas City Star and The Daily Record (but no later than **March 9, 2011**), plaintiff's counsel shall file an affidavit with the Court to evidence the fact that the notice was published.

(4) Defendant's counsel shall file an affidavit with the Court on or before **April 5, 2011**, evidencing the fact that notice was posted in a conspicuous location in restaurant for 60 days. The affidavit <u>must</u> specify the location where notice was posted.

(5) The deadline for requests for exclusions pursuant to Federal Rule of Civil Procedure 23(c)(2) as set out in the Notice shall be **April 11, 2011.**

(6) Plaintiff's counsel shall file an affidavit with the Court which shall provide a list of all persons from whom exclusion requests have been received, identified by name and address, by **April 18, 2011**.

### III. Conclusion

Therefore, for the foregoing reasons, (1) Defendant's Motion to Decertify Class (Doc. No. 215) is **DENIED**; (2) Plaintiff's Motion to Strike Defendant JP's Reply Suggestions (Doc. No. 226) is **DENIED**; (3) JP's Motion for Leave to File Reply Suggestions in Support of its

Motion to Decertify Class (Doc. No. 227) is **GRANTED**; and (4) Plaintiff's Motion for Reconsideration of Order on Notice (Doc. No. 219) is **GRANTED IN PART and DENIED IN PART**, as detailed above.

**IT IS SO ORDERED.**

/s/Fernando J. Gaitan, Jr.
Chief United States District Judge

Dated: 01/19/11
Kansas City, Missouri